# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 14-3437

———————————————

United States of America

*Plaintiff - Appellee*

v.

Samuel B. Ford

*Defendant - Appellant*

———————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

———————

Submitted: November 16, 2015
Filed: April 28, 2016
[Unpublished]

———————

Before SMITH, BYE, and BENTON, Circuit Judges.

———————

PER CURIAM.

Pursuant to 21 U.S.C. § 841(b)(1)(A), the district court[1] sentenced Samuel Ford to a mandatory life term for distribution of a controlled substance near a protected

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

location after having been previously convicted of at least two other felony drug offenses. Ford appeals, arguing that his sentence is (1) unlawful under the plain language of 21 U.S.C. § 841, and (2) a violation of the Eighth Amendment's prohibition of cruel and unusual punishments. We affirm.

## I. *Background*

In a second superseding indictment, Ford was charged with violating "Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 851 and 860(a)." A jury convicted Ford of distribution of heroin within 1,000 feet of a protected location, resulting in the death of another ("Count I"), and distribution of cocaine base and heroin ("Count II"). With respect to both counts, the government timely filed an information of its intent to seek enhanced penalties because of Ford's prior convictions. *See* 21 U.S.C. § 851(a)(1). Initially, the district court sentenced Ford to a mandatory life term on Count I and a 360-month term on Count II, to run concurrently. In a prior appeal before this court, Ford ultimately prevailed in having his sentence vacated. *United States v. Ford*, 750 F.3d 952 (8th Cir. 2014). In light of *Burrage v. United States*, 134 S. Ct. 881 (2014), we reversed Ford's conviction with respect to Count I but affirmed in all other respects. *Id.* at 955–56. We remanded Ford's case to the district court with directions to "enter judgment on the lesser included offense of distribution of a controlled substance within 1,000 feet of a protected location." *Id.* at 956 (citing 21 U.S.C. §§ 841(a)(1), 860(a)). The district court again sentenced Ford to a mandatory life sentence solely based on his conviction of distribution of a controlled substance within 1,000 feet of a protected location. The amended judgment reflects that Ford was "adjudicated guilty of . . . 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 851, and 860(a)."

## II. *Discussion*

At sentencing, Ford objected to his sentence on Eighth Amendment grounds only. Therefore, we review de novo Ford's Eighth Amendment sentencing challenge. *See United States v. Scott*, 610 F.3d 1009, 1017 (8th Cir. 2010). But we review for

plain error his unpreserved challenge to the lawfulness of his sentence. *See United States v. Emly*, 747 F.3d 974, 981 (8th Cir. 2014).

## A. *21 U.S.C. § 841(b)(1)(A)*

Ford first argues that the sentence that the district court imposed is illegal because the maximum sentence § 841 authorizes is 60 years. Ford reasons that because the jury made no findings that the quantity of heroin distributed was greater than 100 grams, § 841(b)(1)(C) provides the appropriate statutory sentencing range. Under subsection (b)(1)(C), a life sentence is authorized only "if death or serious bodily injury results from the use of such substance." Otherwise, a maximum term of 30 years is authorized under subsection (b)(1)(C). In accordance with the doubling provision of § 860(a), Ford concludes that the maximum sentence the court can impose is 60 years.

We dispose of Ford's argument simply by referencing the text of § 841(b)(1)(A). Ford is correct that subsection (b)(1)(A)(i)'s penalties apply to distribution of "1 kilogram or more of a mixture or substance containing a detectable amount of heroin." Ford is, however, incorrect that subsection (b)(1)(A)'s penalties do not also apply to the conduct for which he was convicted. Section 841(b)(1)(A)(viii) also states:

> If any person commits a violation of this subparagraph *or* of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence.

(Emphasis added.) Ford overlooks the disjunctive "or," which properly brings his conduct within the province of subsection (b)(1)(A)'s mandatory life sentence. A mandatory life sentence applies to any person who distributes certain quantities of controlled substance *or* to any person who violates § 860 "after two or more prior

convictions for a felony drug offense." 21 U.S.C. § 841(b)(1)(A)(viii). Ford was convicted under § 860 after having been convicted of at least two prior felony drug offenses. That Ford was not charged under § 841(b)(1)(A) specifically does not make his sentence illegal. *See Almendarez–Torres v. United States*, 523 U.S. 224, 228 (1998) (holding that "[a]n indictment . . . need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime"). The government properly notified Ford that it would be seeking an increased punishment based on Ford's ten prior felony convictions. *See* 21 U.S.C. 851(a). The district court did not illegally sentence Ford to a mandatory life term.

## B. *Eighth Amendment*

Ford next attacks his sentence based on the Eighth Amendment's Cruel and Unusual Punishment Clause. Ford argues that recent changes in the United States Supreme Court's Eighth Amendment jurisprudence warrant a reversal of his sentence. Specifically, Ford argues that the Court's analysis in *Graham v. Florida*, 560 U.S. 48 (2010), "indicate[s] that mandatory life sentences without parole, *imposed without an individualized assessment of the offense and the characteristics of the offender*, violate[] the Eighth Amendment's ban on cruel and unusual punishment."

The Eighth Amendment[2] "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)); *see also Graham*, 560 U.S. at 59–60 (noting that Justice Kennedy's concurrence in *Harmelin* is the controlling opinion). To determine whether a sentence for a term of years is grossly disproportionate, a reviewing court undertakes "a threshold comparison of the crime committed and the sentence imposed." *Harmelin*, 501 U.S. at 1005. In the rare case that the threshold comparison

---

[2]"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

"leads to an inference of gross disproportionality," the court should then perform a comparative analysis of the defendant's sentence with sentences received by other offenders in the same jurisdiction and other jurisdictions. *Id.*

Ford's mandatory life sentence is not grossly disproportionate compared to his criminal conviction. Statutes that impose mandatory life sentences "for drug offenses do not violate the Eighth Amendment's prohibition of cruel and unusual punishments." *United States v. Collins*, 340 F.3d 672, 679 (8th Cir. 2003) (citation omitted). "It is well settled that a sentence within the range provided by statute is generally not reviewable by an appellate court." *Id.* (citation omitted). Furthermore, we have never found a sentence that falls within the range prescribed by statute to be an Eighth Amendment violation. *Id.* at 680. Ford's sentence falls within the range provided by § 841(b)(1)(A). Ford's argument and legal authority do not persuade us to hold that § 841(b)(1)(A)'s mandatory life sentence violates the Eighth Amendment.

We have previously considered and rejected a similar *Graham*-based argument. In *United States v. Scott*, 610 F.3d 1009 (8th Cir. 2010), the defendant relied on *Graham* in challenging the sentencing court's use of prior juvenile felony drug convictions. *Id.* at 1017. We explained that the Supreme Court's "analysis in *Graham* was limited to defendants sentenced to life in prison without parole for crimes committed as juveniles. The Court in *Graham* did not call into question the constitutionality of using prior convictions, juvenile or otherwise, to enhance the sentence of a convicted adult." *Id.* at 1018. Likewise, the Court in *Graham* did not call into question the use of mandatory life sentences for adult offenders. Indeed, much of the analysis of *Graham* centers on the distinction between juvenile and adult offenders. *See Graham*, 560 U.S. at 68–72 (finding that "compared to adults," juveniles are less culpable, more capable of change, and less susceptible to deterrence).

Notably, Ford's argument, if adopted, would effectively require holding that statutes imposing mandatory life terms are categorically unconstitutional. Ford's logic would permit life sentences only after sentencing courts engage in an additional analysis similar to the analysis already present under 18 U.S.C. § 3553. Contrary to Ford's assertion that *Graham's* rationale supports this argument and "substantially undercut[s]" "the rationale of *Harmelin*," the Court in *Graham* expressly reaffirmed the two classifications set out by the Court in *Harmelin*. *See id*. at 59–62. The analysis in *Graham* was limited to the second classification of cases, where categorical rules define Eighth Amendment standards. *Id.* at 60. But the Court did not reject the validity of the first classification, where a sentence is assessed for gross disproportionality. *Id.* at 59. Like Ford, the petitioner in *Harmelin* "attack[ed] his sentence because of its mandatory nature," arguing that "any severe penalty scheme requires individualized sentencing so that a judicial official may consider mitigating circumstances." 501 U.S. at 1006 (Kennedy, J., concurring in part and concurring in judgment). The Court held that its "precedents do not support this proposition." *Id.* Rather, the Court explained that its precedents demonstrate that there is no requirement of individualized sentencing in noncapital cases. *Id.*

As discussed above, Ford's sentence is not an "extreme sentence[] that [is] grossly disproportionate to the crime." *See id.* at 1001 (quotation and citation omitted).

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____